IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| CFSC CONSORTIUM, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL ACTION FILE ) ) NO. _____ |
| ROBERT E. MASON and CHARLES L. MASON, JR., | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

COMES NOW, CFSC CONSORTIUM, LLC (hereinafter "CFSC"), and files this its Complaint against the Defendants, respectfully showing this Honorable Court as follows:

1.

Defendant ROBERT E. MASON (hereinafter "Defendant Mason") and Defendant CHARLES L. MASON, JR. (hereinafter "Defendant Mason Jr.") (hereinafter referred to collectively as "Defendants") reside in Morgan County, Georgia, and are subject to the jurisdiction of this Court. Plaintiff CFSC is a Delaware limited liability company with a principal place of business in the state of Minnesota. Venue is proper herein pursuant to 28 U.S.C. § 1391.

2.

The amount in controversy in this case, exclusive of interest and costs, is in excess of SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($75,000.00). Plaintiff CFSC and Defendants are citizens of different states; therefore, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.

/

3.

On or about April 22, 1977, Flynn Dillard Morris, Jr., d/b/a Morris Farm, obtained a loan from The First National Bank, Madison, Georgia (hereinafter "the Loan"). Mr. Morris executed and delivered a Promissory Note in favor of The First National Bank, Madison, Georgia (hereinafter "the Note"), evidencing the Loan transaction.

4.

Said Note was for the original principal amount of THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00), due and payable with interest in monthly installments of principal and interest.

5.

The United States Small Business Administration (hereinafter "SBA") guaranteed the Loan; therefore, SBA requirements had to be fulfilled before the Loan could be funded.

6.

On or about April 22, 1977, Defendant Mason and Defendant Mason, Jr. each executed and delivered to the First National Bank, Madison, Georgia, a Small Business Administration Guaranty (hereinafter "the Guaranty"), unconditionally guaranteeing payment of the Note to the order of the Note holder. A true and correct copy of the Guaranty is attached hereto as Exhibit "A" and incorporated herein by reference.

7.

Defendant Mason and Defendant Mason, Jr. had a maximum exposure under the Guaranty of fifty percent (50%) of the outstanding balance due under the terms of the Note.

8.

On or about October 8, 1986, Defendant Mason and Defendant Mason, Jr., together with the Small Business Administration, executed a certain Compromise Agreement (hereinafter "the Compromise Agreement") whereby Defendant Mason and Defendant Mason, Jr. agreed to compromise the liability incurred under the Guaranty by agreeing to pay to the Small Business Administration the amount of ONE HUNDRED THIRTY-SIX THOUSAND NINE HUNDRED SIXTEEN DOLLARS AND NO/100 DOLLARS ($136,916.00), plus interest accruing at a rate of eight percent (8%) per year. A true and correct copy of the Compromise Agreement is attached hereto as Exhibit "B" and incorporated herein by reference.

9.

On or about September 21, 1999, the Small Business Administration transferred, sold, and assigned the Compromise Agreement to Plaintiff CFSC.

10.

The Compromise Agreement provides, *inter alia*:

> [t]he parties have agreed to compromise the liability of Guarantors for the sum of $136,916.00, which will be paid to the SBA by the Guarantors with eight (8%) per annum interest on the unpaid portion thereof [. . .]. [S]hould the Guarantors fail to make the payments required [. . .] in substantial conformity [with the Compromise Agreement], the SBA, *at its option*, may hold this Compromise Agreement for naught [. . .]. (Emphasis added).

11.

Pursuant to the terms of the Compromise Agreement, *inter alia*, Defendants were to pay all principal and interest owed under the terms of the Compromise Agreement within three (3) years of a separate SBA loan (Loan DBL 936646 10 00 ATL) having been paid in full.

12.

Loan DBL 936646 10 00 ATL was paid in full in December, 1990, and Defendants' obligations under the Compromise Agreement matured in full in December, 1993.

13.

Defendants have failed to adequately and timely pay interest due under the Compromise Agreement. Further, Defendants have failed to make any payment against the principal owed under the Compromise Agreement, and Defendants are, therefore, in default under the terms of the Compromise Agreement.

14.

By letter sent on or about September 28, 2000, Plaintiff CFSC demanded the entire balance owed under the terms of the Compromise Agreement; Defendants were given until October 15, 2000, to remit the sums due. A true and correct copy of the September 28, 2000, letter is attached hereto as Exhibit "C" and incorporated herein by reference.

15.

The September 28, 2000, letter (Exhibit "C" hereto) placed Defendants on notice that Plaintiff CFSC would seek attorney fees and court costs expended in enforcing the Compromise Agreement if Defendants did not submit payment on or before October 15, 2000.

16.

Defendants have failed to remit the sums due under the Compromise Agreement.

17.

As of January 31, 2001, Defendants owed Plaintiff CFSC the amount of ONE HUNDRED FIFTY-NINE THOUSAND FIVE HUNDRED SIXTY-FIVE AND 87/100 DOLLARS

($159,565.87) pursuant to the terms of the Compromise Agreement. The total amount owed is comprised of the entire principal amount, together with TWENTY-TWO THOUSAND SIX HUNDRED FORTY-NINE AND 87/100 DOLLARS ($22,649.87) interest. Interest accrues at a rate of TWENTY-NINE AND 92/100 DOLLARS ($29.92) per day.

18.

Plaintiff CFSC is entitled to recover its costs and expenses of enforcing the Compromise Agreement, including reasonable attorney fees. Notice is hereby given in accordance with O.C.G.A. § 13-1-11 of Plaintiff CFSC's intention to seek attorney fees. Defendants are hereby notified that they have ten (10) days following service of this Complaint and Summons in which to pay the amounts stated and avoid liability for attorney fees.

19.

Defendants' failure to abide by the express terms of the Compromise Agreement and their refusal to remit sums due upon demand has caused Plaintiff CFSC unnecessary trouble and expense, and constitutes bad faith and stubbornly litigious behavior for which Plaintiff CFSC is entitled to recover reasonable attorney fees.

WHEREFORE, Plaintiff CFSC CONSORTIUM, LLC prays for judgment against Defendant ROBERT E. MASON and Defendant CHARLES L. MASON, JR., jointly and severally, as follows:

(a) For the outstanding balance of principal due under the Compromise Agreement;

(b) For past due interest and all interest which accrues through the date of judgment;

(c) For all costs of this action;

(d) Pursuant to O.C.G.A. § 13-1-11, for accrued statutory attorneys' fees, which continue to accrue in proportion to accruing interest through the date of judgment; or, in the alternative,

(e) Pursuant to O.C.G.A. § 9-15-14, for reasonable attorneys' fees and expenses of litigation in prosecuting this action against Defendants; and

(f) For any and all further relief which this Court may deem just and proper.

This 8th day of March, 2001.

Respectfully submitted,

_____
PETER L. LUBLIN
(Georgia State Bar No. 460461)

_____
SCOTT H. MICHALOVE
(Georgia State Bar No. 504016)

ATTORNEYS FOR PLAINTIFF

McCALLA, RAYMER, PADRICK,
 COBB, NICHOLS & CLARK, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
(770) 804-0400 (Telephone)
(770) 643-7242 (Facsimile)

\\TOUCHSTONE\PLEADINGS\COMPLAINT

**EXHIBIT "A"**

Case 3:01-cv-00024-DF    Document 1    Filed 03/09/01    Page 7 of 13



| | SBA LOAN NO. |
|---|---|
| | GP-P-812146 10 08-ATL |

## SMALL BUSINESS ADMINISTRATION (SBA)
## GUARANTY

April 22, 19 77

**The First National Bank,**
Madison, Georgia (hereinafter called "Lender") to make a loan or loans, or renewal or extension thereof, to
(SBA or other Lending Institution)

Flynn Dillard Morris, Jr. d/b/a Morris Farm (hereinafter called the "Debtor"), the Undersigned hereby unconditionally guarantees to Lender, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on and all other sums payable, or stated to be payable, with respect to the note of the Debtor, made by the Debtor to Lender, dated April 22, 1977 in the principal amount of $300,000.00 with interest at the rate of 9 1/4% per centum per annum. Such note, and the interest thereon and all other sums payable with respect thereto are hereinafter collectively called "Liabilities." As security for the performance of this guaranty the Undersigned hereby mortgages, pledges, assigns, transfers and delivers to Lender certain collateral (if any), listed in the schedule on the reverse side hereof. The term "collateral" as used herein shall mean any funds, guaranties, agreements or other property or rights or interests of any nature whatsoever, or the proceeds thereof, which may have been, are, or hereafter may be, mortgaged, pledged, assigned, transferred or delivered directly or indirectly by or on behalf of the Debtor or the Undersigned or any other party to Lender or to the holder of the aforesaid note of the Debtor, or which may have been, are, or hereafter may be held by any party as trustee or otherwise, as security, whether immediate or underlying, for the performance of this guaranty or the payment of the Liabilities or any of them or any security therefor.

The Undersigned waives any notice of the incurring by the Debtor at any time of any of the Liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

(a) To modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon (but not to increase the principal amount of the note of the Debtor to Lender), to grant any extension or renewal thereof and any other indulgence with respect thereto, and to effect any release, compromise or settlement with respect thereto;

(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement;

(c) To forbear from calling for additional collateral to secure any of the Liabilities or to secure any obligation comprised in the collateral;

(d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by Lender;

(e) In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Lender may elect, at any public or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law.

The obligations of the Undersigned hereunder shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights or recourse against Lender, by reason of any action Lender may take or omit to take under the foregoing powers.

In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the Undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the Undersigned. Lender shall not be required, prior to any such demand on, or payment by, the Undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral. The Undersigned shall have no right of subrogation whatsoever with respect to the Liabilities or the collateral unless and until Lender shall have received full payment of all the Liabilities.

The obligations of the Undersigned hereunder, and the rights of Lender in the collateral, shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights against Lender; by reason of the fact that any of the collateral may be in default at the time of acceptance thereof by Lender or later; nor by reason of the fact that a valid lien in any of the collateral may not be conveyed to, or created in favor of, Lender; nor by reason of the fact that any of the collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way; nor by reason of the fact that any of the Liabilities may be invalid for any reason whatsoever; nor by reason of the fact that the value of any of the collateral, or the financial condition of the Debtor or of any obligor under or guarantor of any of the collateral, may not have been correctly estimated or may have changed or may hereafter change; nor by reason of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral, unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of Lender.

The Undersigned agrees to furnish Lender, or the holder of the aforesaid note of the Debtor upon demand, but not more often than semiannually, so long as any part of the indebtedness under such note remains unpaid, a financial statement setting forth, in reasonable detail, the assets, liabilities and net worth of the Undersigned.

The Undersigned acknowledges and understands that if the Small Business Administration (SBA) enters into, has entered into, or will enter into, a Guaranty Agreement, with Lender or any other lending institution, guaranteeing a portion of Debtor's Liabilities, the Undersigned agrees that it is not a coguarantor with SBA and shall have no right of contribution against SBA. The Undersigned further agrees that all liability hereunder shall continue notwithstanding payment by SBA under its Guaranty Agreement to the other lending institution.

The term "Undersigned" as used in this agreement shall mean the signer or signers of this agreement, and such signers, if more than one, shall be jointly and severally liable hereunder. The Undersigned further agrees that all liability hereunder shall continue notwithstanding the incapacity, lack of authority, death, or disability of any one or more of the Undersigned, and that any failure by Lender or its assigns to file or enforce a claim against the estate of any of the Undersigned shall not operate to release any other of the Undersigned from liability hereunder. The failure of any other person to sign this guaranty shall not release or affect the liability of any signer hereof.

This Guaranty is at all times limited to (CLM)
fifty (50%) per cent of the outstanding (REM)
balance of the aforesaid loan.

Charles L. Mason, Jr. and Robert
E. Mason, d/b/a Morris Farms

S/ CHARLES L MASON JR
Charles L. Mason, Jr., Partner
S/ ROBERT E MASON
Robert E. Mason, Partner

NOTE—Corporate guarantors must execute guaranty in corporate name, by duly authorized officer, and seal must be affixed and duly attested; partnership guarantors must execute guaranty in firm name, together with signature of a general partner. Formally executed guaranty is to be delivered at the time of disbursement of loan.

(LIST ON REVERSE SIDE COLLATERAL SECURING THE GUARANTY)



SBA FORM 148 (8-74) REF 10F 70 30 USE 6-71 EDITION UNTIL EXHAUSTED

**EXHIBIT "B"**

SBA Loan No. GP-F 812146 10 03 ATL

## COMPROMISE AGREEMENT

FOR AND IN CONSIDERATION of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt of which is hereby acknowledged, ROBERT E. and CHARLES L. MASON, hereinafter referred to as "the Guarantors", and SMALL BUSINESS ADMINISTRATION, an Agency of the United States, hereinafter referred to as "SBA", agree as follows:

1.

FLYNN DILLARD MORRIS, Jr. d/b/a MORRIS FARM, to evidence a bona fide loan of money from SBA, executed a Promissory Note dated April 22, 1977, for the principal amount of $300,000, payable to the order of SBA, which is the owner and holder thereof.

2.

As partial inducement for SBA to make said loan, the Guarantors executed a Guaranty dated April 22, 1977 unconditionally guaranteeing payment of said Note. Said Guaranty is presently owned and held by SBA.

3.

The parties hereto have agreed to compromise the liability of the Guarantors for the sum of $136,916.00, which will be paid to the SBA by the Guarantors with eight (8%) per annum interest on the unpaid portion thereof from and after September 15, 1986, by making semi-annual payments of $5,476.64 commencing March 15, 1987. Semi-annual payments constituting the eight (8%) interest on the amount owed will continue for an initial three year period. SBA will continue to accept interest-only payments after the initial three year period and only until the Mason loan (DLB 936646 10 00 ATL) has been paid-in-full. Once the Mason loan (DLB 936646 10 00 ATL) has been paid-in-full the guaranteed portion ($136,916.00) represented by this Compromise Agreement will then be amortized over a three (3) year period.

4.

Should the Guarantors well and truly pay said sum of $136,916.00 in substantial compliance with the requirements of paragraph three (3) above, then SBA will regard the Guarantors as fully discharged from any and all further liability because of their guaranty on said Note.

-2-

HOWEVER, should the Guarantors fail to make the payments required by said paragraph three (3) in substantial conformity with the requirements thereof, the SBA, at its option, may hold this Compromise Agreement for naught and of no effect and, after applying to the balance due on said Note all payments made pursuant to this Agreement, take such action as it may deem appropriate to collect the balance then due on said Note.

5.

The parties hereto fully understand and agree that this Compromise Agreement is executed for the compromise of the liability the Guarantors only and for the release only of their guaranty mentioned herein, and that in no way does it affect the liability of any other person, firm or corporation or any other collateral securing said loan.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands and seals this _____ 8th _____ day of __October__, 1986.

_____    _____ (L.S.)
WITNESS                     ROBERT E. MASON

_____    _____ (L.S.)
WITNESS                     CHARLES L. MASON

                            U.S. SMALL BUSINESS ADMINISTRATION

_____    _____ (L.S.)
WITNESS                     CHARLES E. ANDERSON
                            SUPERVISORY LOAN SPECIALIST
                            PORTFOLIO MANAGEMENT DIVISION
                            ATLANTA DISTRICT OFFICE

_____
NOTARY PUBLIC

DATE NOTARIZED: 10-8-86
Notary Public, Georgia State at Large
COMMISSION EXPIRES: My Commission Expires July 3, 1988



**EXHIBIT "C"**



# TOUCHSTONE

ASSET MANAGEMENT

P.O. Box 31355 Hartford, CT 06150-1355

Via First Class & Certified
Mail Return Receipt Requested

September 28, 2000

Robert E. and Charles L. Mason
C/o Allan R. Roffman
Lambert and Roffman LLC
126 East Washington St
Madison, Georgia 30650

RE: **NOTICE OF MATURITY**
   **Loan Number:   120800107**

Dear Sirs :

Your loan with CSFC Consortium, LLC, described more fully above, matured on September 15 2000. The entire unpaid principal balance, plus accrued interest, late charges and other fees is now due and payable in full. As of the date of this letter the entire amount due is as follows:

| | |
|---|---|
| Principal | $ 136,916.00 |
| Interest | $ 18,909.45 |
| **Total Now Due** | **$155,825.45** |

Please submit payment by wire transfer or certified funds in the full amount stated, plus additional accrued interest at the rate of $29.93 per day until the date of payment, on or before October 15, 2000.

Failure to submit said payment by the given date may result in immediate foreclosure action and the subsequent sale of the property securing said loan without further notice or demand. In addition, failure to submit said payment may cause you to incur additional liability for lender's expense of collection, including but not limited to, expenses of foreclosure, attorney fees and court costs.

Nothing contained in this agreement shall constitute an election of remedies, a waiver or limitation of the lender's rights under the loan documents or under applicable law, including the right to take action with respect to any collateral securing your liabilities to the lender as may be permitted by the loan documents and/or by law.

If you have any questions concerning this notice of maturity notice, contact the undersigned at 1-800-381-6356.

Yours truly,

*Denny Faire* DF
Denny Faire
Account Manager

**Notice**
We are attempting to collect a debt and any information obtained will be used for that purpose.